STATE of Missouri, Respondent,

v.

Kevin COLLINS, Appellant.

Kevin COLLINS, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 56145, 58471.

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 10, 1991.

**258**

Melinda Kay Pendergraph, St. Louis, for appellant.

William L. Webster, Atty. Gen., Joseph P. Murray, Asst. Atty. Gen., Jefferson City, for respondent.

SATZ, Judge.

A jury convicted defendant of possession of cocaine and of possession of heroin, § 195.020, RSMo 1986.[1] The court sentenced him to two terms of twelve years imprisonment, to be served concurrently. Defendant appeals from these convictions and also appeals from the denial of his Rule 29.15 motion. We affirm.

In his appeal from his convictions, defendant contends the trial court erred in denying his motion to suppress physical evidence and in denying his motion to suppress his post-arrest statements. Neither contention has merit.

### Motion to Suppress Evidence

To review a denial of a pre-trial motion to suppress evidence, we are not limited to the record made at the pre-trial hearing on that motion. *E.g. State v. Howell*, 524 S.W.2d 11, 19 (Mo. banc 1975); *State v. Carrico*, 696 S.W.2d 511, 513 (Mo. App.1985). A trial court's denial of the motion is interlocutory. *Howell* at 19. Moreover, there is no constitutional imperative to hear the motion out of the presence of the jury. *Howell* at 19; *see, Watkins v. Sowders*, 449 U.S. 341, 349, 101 S.Ct. 654, 659, 66 L.Ed.2d 549, 556 (1981). "The real damage is not done until the evidence [in issue] is introduced ... for consideration by a jury." *Howell* at 19. Thus, to determine whether the physical evidence in issue should have been suppressed, we may consider the record made at the pretrial hearing, as well as the record made at trial prior to the introduction of the evidence sought to be suppressed. *Howell* at 19.

The present record so viewed shows that about 9:00 p.m. on January 22, 1988, police officers, acting on information received from an informant, set up a surveillance in

---

1. This statute was repealed in 1989.

the 2700 block of Dr. Martin Luther King Drive. According to the informant, defendant was selling "boys and girls, ... the slang term for heroin and cocaine", from a blue car at that location. One of the officers, John McKenzie, knew "drugs" were being sold in that neighborhood. He also knew defendant, and defendant had previously told him he had "drug convictions."

During the surveillance, the officers watched defendant through binoculars, from a "half of a linear block" away. Through his binoculars, McKenzie saw defendant standing in front of a pool hall, across the street from the blue car. The lighting was "relatively good," with "street lights all along the 2700 ... block ..." and lights in "front of the pool hall".

Within a period of ten minutes, on three separate occasions, McKenzie saw unidentified individuals walk up to defendant, reach into their pockets, pull out what appeared to be paper currency, count the paper, and then hand it to defendant. Defendant would then walk across the street to the car, enter the car on the passenger side, sit down for a few minutes, exit the car, walk back across the street and hand the individual something which McKenzie could not identify.

The officers then returned to a pre-designated "staging area", got into an unmarked police car, and the driver drove up alongside of the blue car. Defendant was sitting in the car, on the passenger side, with the door open. As McKenzie exited his car, he looked into the blue car and saw defendant "hunched over ... fiddling with what appeared to be two pill bottles." Defendant "looked up and apparently saw [McKenzie] or the other officers". He started to get out of the blue car, and, as he did, he "dropped, ..., one pill bottle to the floor" of the car. Defendant exited the car and began walking away.

McKenzie went around the blue car to its passenger side. The car door was still open. He looked into the car and saw two pill bottles lying on the floor on the passenger side. He told one of the other officers that there were "two pill bottles on the floor of the car," and that officer "stopped" defendant.

McKenzie picked up the pill bottles. "[W]hen [he] first picked them up, [he] could see they contained some type of capsules". He was not asked specifically what he thought the capsules contained prior to his opening of the bottles. He did say, however, that, after he opened the bottles and again viewed the capsules, he saw the capsules were "pink and clear" containing powder which he "believed to be a controlled substances [sic]." He had seen similar capsules during his thirteen years as a police officer, and, based upon his experience, he believed these capsules contained cocaine and heroin. Defendant was then formally placed under arrest.

On this evidence, the court denied defendant's motion to suppress evidence and permitted the state to introduce the pill bottles and capsules.

Defendant contends the pill bottles and capsules were obtained by an illegal seizure and search in violation of his rights guaranteed by the Fourth Amendment of the United States Constitution and Article I, Section 15 of the Missouri Constitution. In his attack, defendant does not address the issue of abandonment, and the state does not justify its seizure of the pill bottles on that ground. Understandably so. The record is equivocal on this issue and does not show defendant abandoned this evidence even in the Fourth Amendment sense. *See e.g. Rios v. United States*, 364 U.S. 253, 262, 80 S.Ct. 1431, 1437, 4 L.Ed.2d 1688, 1694 (1960); *State v. Simpson*, 611 S.W.2d 556, 558 (Mo.App.1981).

Defendant's attack on the trial court's denial of his motion, however, is neither clear nor explicit. As we understand it, it is a three-pronged attack.

Defendant first contends that prior to McKenzie's seeing the pill bottles in the blue car, the officers did not have probable cause to search that car and seize the bottles. Second, this lack of probable cause cannot be cured by McKenzie's view of the pill bottles because his view did not meet the requirements of the plain view doctrine. Third, even if McKenzie's view were prop-

er, it, along with the other facts, justified only his seizure of the pill bottles, not his opening of them which was a search in violation of defendant's constitutional rights. We disagree.

### Probable Cause

■ The Fourth Amendment's protection against warrantless searches and seizures is enforceable against the states under the due process clause of the Fourteenth Amendment. *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081, 1090 (1961); *State v. Witherspoon,* 460 S.W.2d 281, 283–84 (Mo.1970). The protection afforded by Article 1, § 15 of our state constitution parallels that Fourth Amendment protection. *State v. McCrary,* 621 S.W.2d 266, 273 (Mo. banc 1981). An exception to this warrant requirement is the search of an automobile. *United States v. Ross,* 456 U.S. 798, 806, 102 S.Ct. 2157, 2163, 72 L.Ed.2d 572, 582 (1982); *State v. Burkhardt,* 795 S.W.2d 399, 404 (Mo. banc 1990). The automobile search may be conducted on the probable cause which would justify the issuance of a warrant and exigent circumstances necessitating the search. *Ross,* 456 U.S. at 804–809, 102 S.Ct. at 2162–2164; *Burkhardt* at 404.[2] Probable cause, thus, may arise when the known facts would cause a person of "reasonable caution" to believe the contents of the automobile "offend the law." *Burkhardt* at 404; *Ross,* 456 U.S. at 808–809, 102 S.Ct. at 2164–2165.

■ Here, McKenzie had probable cause to search the blue car prior to his seeing the pill bottles in it. He knew "drugs" were sold in the area, knew defendant had drug convictions and was informed defendant was selling cocaine and heroin. From his observation of defendant receiving what appeared to be money in exchange for objects apparently taken from the blue car, he could, as a reasonable man, infer defendant was selling these objects. Thus, from the facts he knew prior to observing defendant's conduct and the facts he gained from observing defendant's conduct,

McKenzie could, as a reasonable man, infer defendant was selling drugs taken from the blue car. *Ross, supra,* 456 U.S. at 808, 102 S.Ct. at 2164; *see, e.g., State v. Speed,* 458 S.W.2d 301 (Mo.1970).

Defendant, however, argues there was no probable cause to believe drugs were in the blue car because the officers did not see anyone using or dispensing drugs and they did not see any conduct from which drug use or possession could be inferred, "unless walking across the street and talking to people constitutes behavior warranting search and seizure." Defendant omits most of the facts known to McKenzie, and, rather than viewing those facts as a reasonable officer would to determine probable cause to search the car, defendant views the facts as an obsessive officer would to determine virtual certainty before searching the car.

### Seizure and Plain View Doctrine

Defendant contends the lack of probable cause, as perceived by him, cannot be cured by McKenzie's view of the pill bottles because this view does not meet the requirements of the plain view doctrine, namely, that McKenzie's view of the bottles was not "inadvertent" and their incriminating nature could not be "readily apparent" to him. This argument is misdirected and, thus, misses the mark.

As we have demonstrated, even prior to his seeing the pill bottles, McKenzie had probable cause to believe drugs were in the blue car and, therefore, at that time, had probable cause to search the entire car. *Ross, supra; Burkhardt, supra.* Moreover, the plain view doctrine relied on by defendant is irrelevant here.

■ In *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the Court explained the plain view doctrine by stating:

> What the "plain view" cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came

---

**2.** Defendant does not question the existence of exigent circumstances. *See, e.g. State v. Ritter,*

809 S.W.2d 175 (E.D.Mo.1991) and cases discussed therein.

inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification ... and permits the warrantless seizure.

. . . . .

Where, once an otherwise lawful search is in progress, the police inadvertently come upon a piece of evidence, it would often be a needless inconvenience, and sometimes dangerous—to the evidence or to the police themselves—to require them to ignore it until they have obtained a warrant particularly describing it. *Id.* at 466–468, 91 S.Ct. at 2038–2039. The plurality of the Court set out three prerequisites to make a seizure of evidence valid under the doctrine: (1) there must be a prior valid intrusion; (2) the observation of the seized evidence must be inadvertent; and (3) it must be immediately apparent the object to be seized is evidence or contraband. *Id.* at 465–469, 91 S.Ct. at 2037–2040. The second requirement, inadvertence, relied on by defendant, is no longer a necessary precondition to a plain view seizure. *Horton v. California,* —— U.S. ——, ——, 110 S.Ct. 2301, 2310, 110 L.Ed.2d 112, 125–26 (1990).

■ More important, however, the fact situation contemplated by *Coolidge* does not "[encompass] those circumstances in which an observation is made by a police officer without a prior physical intrusion into a constitutionally protected area." LaFave, *Search And Seizure,* § 2.2(a), p. 322 (2d ed. 1987). Here, the vantage point from which McKenzie viewed the pill bottles was not a constitutionally protected area. It was from the street, a place where he or any other person had a right to be. Quite simply, this view did not constitute an intrusion covered by the constitutional search and seizure provisions in question, and, therefore, the three *Coolidge* prerequisites need not be met.

Having said this, we must acknowledge the case of *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), in which, on facts similar to the present case, the four-Justice plurality used the plain view doctrine to justify the seizure of an opaque balloon from a car. In *Brown,* after the car was lawfully stopped for a routine license check, the officer saw the defendant drop an opaque balloon onto the seat of the car and then saw several plastic vials, some loose white powder and additional balloons in an open glove compartment. *Id.* at 733–734, 103 S.Ct. at 1538–1539.

Noting the officer's observations were "what would be entirely visible to him as a private citizen", *Id.* at 740, 103 S.Ct. at 1542, the *Brown* plurality stated that the defendant, thus, had no legitimate expectation of privacy, the observations were not searches within the meaning of the Fourth Amendment, and the first requirement of *Coolidge* was met. *Id.*

The second *Coolidge* requirement—"inadvertence"—no longer needs to be met.

The third *Coolidge* requirement—the seizable nature of the container must be "immediately apparent"—was "very likely an unhappy choice of words" in *Coolidge,* part of the *Brown* plurality said, *Id.* at 741, 103 S.Ct. at 1543, because those words "can be taken to imply ... an unduly high degree of certainty" of incriminating character. *Id.* The requirement is not near certainty, this part the *Brown* plurality stated, rather, all that is required is probable cause that the balloon held in the defendant's hand "contained an illicit substance", *Id.* at 742, 103 S.Ct. at 1543; and, from the officer's observations and experience, he had that probable cause. *Id.* at 742, 103 S.Ct. at 1543.

To the extent one may choose to become likewise entangled in the plain view doctrine here, the present facts meet the requirements of that doctrine, as construed by the plurality in *Brown.* First, as demonstrated, McKenzie's observation of the pill bottles was no more intrusive than the officer's observations in *Brown;* second, "inadvertence" no longer needs to be met, *Horton, supra;* and, third, if McKenzie did not have grounds for a certain belief the pill bottles contained narcotics, he had grounds to probably believe so, which meets *Coolidge's* third requirement as construed by the plurality in *Brown.* We need

not and do not, however, base our decision here on the plurality opinion in *Brown*.

### Seizure and Search of the Pill Bottles

The Fourth Amendment protected two different interests of defendant—his "interest in retaining possession of property and [his] interest in maintaining personal privacy." *Brown, supra*, 460 at 747, 103 S.Ct. at 1546. (Stevens, J., concurring). "A seizure threatens the former, a search the latter." *Id.*

■ Here, defendant's interest in retaining possession of the movable pill bottles is clearly outweighed by the risk they might disappear or be destroyed before a warrant could be obtained. After observing those bottles, along with his prior knowledge, McKenzie had probable cause to believe the bottles contained narcotics, and, he, therefore, could justifiably seize them without a warrant, because the risk of their disappearance or destruction outweighed defendant's possessory interest in them. *See, e.g. United States v. Place*, 462 U.S. 696, 701–702, 103 S.Ct. 2637, 2641, 77 L.Ed.2d 110, 117 (1983); *Brown, supra* 460 U.S. at 748, 103 S.Ct. at 1546.

■ This justification of the seizure, however, does not, in turn, justify the search of the pill bottles; if opening them, was a search. Once the bottles were seized, there was no risk they would disappear or be destroyed. And, the constitutionality of the seizure does not automatically determine the constitutionality of the search. *E.g. Ross, supra.* Thus, the search, the alleged invasion of defendant's reasonable expectation of privacy in the bottles, must be justified on other grounds.

There are two possible justifications. First, what McKenzie gained from surveillance and from his observation of the pill bottles gave him probable cause to believe incriminating evidence was located somewhere in the blue car and not merely in the pill bottles. If so, McKenzie was permitted to examine any container in the car, including the pill bottles. *Ross, supra*,[3] *Brown, supra*, 460 U.S. at 750, 103 S.Ct. at 1547.

Alternatively, McKenzie's examination of the pill bottles can be justified on the grounds that defendant had no reasonable expectation of privacy as to their contents. After McKenzie picked up the pill bottles, he "could see they contained some type of capsules". Although he was not specifically asked what he thought those capsules contained prior to opening the bottles, he did say that, after he opened the bottles, he believed the capsules contained a controlled substance. Based on the facts McKenzie knew prior to opening the bottles and his thirteen years experience as a police officer, common sense dictates, that, if asked, his belief about what the capsules contained prior to opening the bottles would be the same as his belief after opening the bottles. In short, given the facts here, there was justification for McKenzie to be virtually certain the pills in the bottle were narcotics and, thus, the transparency of the bottles obviated any reasonable expectation of privacy guaranteed by the Fourth

---

3. *Ross* reflects an anomaly created by the intersection of two separately developed doctrines concerning warrantless searches of vehicles. In *Ross*, the Court attempted to distinguish between the *Carroll* doctrine, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), which covers searches of vehicles when the police have probable cause to search an entire vehicle, and the *Chadwick–Sanders* doctrine, *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), which governs searches of closed containers being placed in a vehicle, *Chadwick*, or being transported in a vehicle, *Sanders*, when the officers have probable cause only to search the container within the vehicle. *Ross*, 456 U.S. at 804–807, 810–814, 102 S.Ct. at 2162–2164, 2165–2167.

The Court, in *Ross*, held the probable cause that justifies the search of a vehicle also justifies the search of every part of the vehicle and any contents that may be concealed. *Id.* at 825. The Court, however, did not decide whether the Fourth Amendment requires the police to obtain a warrant to open closed containers simply because they lack probable cause to search the entire vehicle.

This latter issue was just recently resolved by the Court in *California v. Acevedo*, —— U.S. ——, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). The Court held that if officers have probable cause to believe a closed container located in a vehicle holds evidence, they may search the container without a warrant, even though they lack probable cause to search the entire vehicle. We need not decide the retroactive effect of *Acevedo* here.

Amendment. *See, Brown, supra,* 460 U.S. at 751, 103 S.Ct. at 1548. This simply is the functional equivalent of the plain view doctrine. *Id.*

### Motion to Suppress Statements

Defendant next contends the trial court erred in denying his motion to suppress his in-custody statements. He argues that the officers did not have probable cause to arrest him until after their alleged illegal search of the blue car and, therefore, his statements were the fruits of his illegal arrest. We have demonstrated the seizure and opening of the pill bottles were not illegal and there was probable cause for defendant's arrest; therefore, defendant's subsequent statements were not the fruits of an illegal arrest. *See, e.g. State v. Vitale,* 801 S.W.2d 451, 454 (Mo.App.1990). Defendant's major premise is false, which makes his conclusion false.

### Rule 29.15 Motion

Defendant contends his trial counsel was ineffective because she failed to interview arrest scene witnesses, both prior to trial and prior to the hearing on his Rule 29.15 motion. The witnesses, defendant contends, would have provided grounds for the suppression of evidence.

If a defendant appeals from his conviction and sentence, he must file his Rule 29.15 motion in the trial court within thirty days after he has filed the trial transcript in the appellate court. Rule 29.15(b). This requirement is jurisdictional. *Smith v. State,* 798 S.W.2d 152, 153 (Mo. banc 1990). According to the record before us, defendant filed his motion more than thirty days after filing his transcript on appeal. We, therefore, lack jurisdiction to consider his motion and dismiss it. *Id.*

Defendant's convictions and sentences are affirmed, and his Rule 29.15 motion is dismissed.

CARL R. GAERTNER, C.J., and SMITH, P.J., concur.