STATE of Missouri, Plaintiff–
Respondent,

v.

Dorothy A. DAY, Defendant–Appellant.

No. 24059.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 23, 2002.

David B. Smith, Springfield, Appellant's attorney.

Jeremiah W. (Jay) Nixon, Atty. Gen., Nicole E. Gorovsky, Asst. Atty. Gen., Jefferson City, Respondent's attorney.

ALMON H. MAUS, Senior Judge.

Appellant Dorothy A. Day was charged with a violation of § 195.211[1] in that she possessed more than five grams of marijuana with intent to distribute. As a foundation for the charge, Highway Patrol officers found and seized 52.6 pounds of marijuana in an automobile appellant was driving. Appellant filed a motion to suppress the evidence of the search of her vehicle and the use of such marijuana as evidence. The trial court denied the motion. The appellant unsuccessfully objected to the admission of that marijuana into evidence. The jury found the appellant guilty and fixed her punishment at imprisonment for eight years. The trial court sentenced appellant to imprisonment for eight years and committed her to the Shock Incarceration Program for 120 days pursuant to § 559.115.

Appellant seeks a reversal of that judgment and a new trial. Appellant argues that the search and seizure was a violation of her constitutional rights and that any consent to that search was invalid as it was not voluntary.

■ In this jury-tried case, with exceptions not applicable to this appeal, only the allegations of error set forth in appellant's motion for new trial have been preserved for appellate review. Rule 29.11(d). Moreover, the issues presented by her brief are governed by the following: "Where the appellate court reviews the decision of a trial court, each point shall: (A) identify the trial court ruling or action that the appellant challenges." Rule 84.04(d)(1)(A).

■ The sole allegation of error in appellant's Motion for New Trial is that the court erred by its "[f]ailure to sustain [appellant's] Motion to Suppress Physical Evidence." Each of the two points in appellant's brief makes this assertion. The denial of a motion to suppress is an interlocutory order, not subject to appeal. "A motion to suppress, in and of itself, preserves nothing for appeal, and ordinarily, a point relied on that refers only to a ruling on such a motion is fatally defective." *State v. Cardona–Rivera*, 975 S.W.2d 200, 203 (Mo.App.1998). *See also State v. Patino*, 12 S.W.3d 733, 740 (Mo. App.1999), and *State v. Rodgers*, 899 S.W.2d 909, 911 (Mo.App.1995).

Appellant's Motion for New Trial preserves nothing for review. Appellant's "Points Relied On" do not present an issue for review. Upon this basis, the judgment of the trial court could properly be affirmed. However, in the exercise of its discretion, the court will, by virtue of Rule 30.20 and Rule 84.13(c), review the record to determine if there is plain error affect-

---

**1.** References to statutes are to RSMo Cum.  Supp.1998.

ing substantial rights which might result in manifest injustice.

The following is a summary of the credible evidence surrounding the search and seizure. Appellant was driving a red Chevrolet Blazer in an easterly direction on I–44 in Greene County. Highway Patrol Officer Matt Funderburk, on duty in the area, noticed the Blazer and by radar determined that it was traveling 75 m.p.h. in a 70 m.p.h. zone. Funderburk activated his warning lights. Appellant slowed, pulled to the side of the highway and stopped. Funderburk stopped behind the Blazer.

Funderburk walked to the Blazer, which bore Arizona plates, approaching it on the passenger side. As he did, he noticed a large cardboard box on the floor behind the driver's seat. Blankets were folded on top of the box. The box was taped shut. A small cooler and trash bag containing fast food wrappers were in the front passenger seat. He asked appellant for her driver's license and registration. Appellant handed him her license and an Avis rental car agreement. Funderburk observed that appellant was extremely nervous, more than the average person stopped, and her hands shook as she handed him the documents. He saw that the typed portion of the rental agreement was in the name of Ursula Slusher. The handwritten name of appellant was on the reverse side as an additional driver. He asked appellant to come to the patrol car while he checked the license and vehicle. She did so.

The check revealed the driver's license was valid and the rental agreement covered the vehicle. Funderburk determined that he would not issue appellant a ticket, but only give her a warning. In giving a warning, no document is given to the person stopped, but a patrol officer does write a record of the stop and warning. He told appellant that he was only giving her a warning and returned her documents. He noticed that she became even more agitated and nervous. Funderburk testified that at this point appellant was free to go, although he did not tell her so. She testified that she did not feel free to go.

Because in his experience the circumstances he observed were consistent with drug trafficking, Funderburk determined to ask further questions of appellant. In response, she said Ursula Slusher was her cousin-in-law and had rented the vehicle as the balance of appellant's credit card was insufficient. She said she was on her way to see her daughter in Cincinnati and that the daughter had been injured. She said the box contained shoes and books. Upon returning the documents, Funderburk asked her if she had anything illegal in the vehicle. Appellant said no. He asked for her consent to search the vehicle. She said "she thought it would be okay."

Appellant hurried ahead of Funderburk and attempted to cover the box with the blanket that had been folded on top of it. He asked her for permission to search the box. She said no. Funderburk leaned in the vehicle and, when close to the box, smelled marijuana, an odor with which he was familiar. Appellant refused his request to open the box. Funderburk then summoned another Highway Patrolman who was in charge of a dog trained to detect drugs, including marijuana. He arrived in approximately 10 minutes. The dog "alerted" on the box. The two officers opened the box and found that it contained two large cellophane bundles of marijuana. They also found a leather purse on the back seat containing a smaller bundle of marijuana. A total of 52.6 pounds of marijuana was found.

█ Appellant's principal contention is that the circumstances did not justify a

reasonable suspicion by Funderburk that she was in violation of the law. The validity of a search of a vehicle after a stop for a traffic violation is a prolific source for appeals. The cases are replete with statements of the applicable principles, often reflecting principles governing a search or an arrest without a warrant. *See State v. Burkhardt*, 795 S.W.2d 399 (Mo. banc 1990). The principle applicable to the validity of the search and seizure in this case, which followed a legitimate stop for a traffic violation, has been summarized.

Regardless of its initial validity, "[a] vehicle stop to issue a written traffic warning for speeding is a seizure within the meaning of the Fourth and Fourteenth Amendments." *State v. Stevens*, 845 S.W.2d [124] at 128 [ (Mo.App. 1993) ]. "If the detention extends beyond the time reasonably necessary to effect its initial purpose, the seizure may lose its lawful character unless a new factual predicate for reasonable suspicion is found during the period of lawful seizure." *Id.* Reasonable suspicion must be based upon a specific, articulable set of facts indicating that criminal activity is afoot. *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1584, 104 L.Ed.2d 1, 10 (1989). The law enforcement authorities must be able to articulate more than just an "inchoate and unparticularized suspicion or 'hunch.'" *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884–85, 20 L.Ed.2d 889 (1968)). Furthermore, the assessment of the officer's actions, in light of the facts and circumstances confronting the officer at the time, must be objective, and not based upon the officer's actual state of mind at the time the challenged action was taken. *State v. Donohoe*, 770 S.W.2d 252, 256 (Mo.App. 1989).

The period of lawful seizure for a traffic stop encompasses that time during which the officer may conduct a reasonable investigation of the traffic violation. Such an investigation may include "asking for the driver's license and registration, requesting the driver to sit in the patrol car, and asking the driver about his destination and purpose." [*State v.*] *McNaughton*, 924 S.W.2d [517,] at 523 [ (Mo.App.1996) ]; *U.S. v. Ramos*, 42 F.3d 1160, 1163 (8th Cir.1994). Once the officer has completed these steps, the detainee must be allowed to proceed unless specific, articulable facts create an objectively reasonable suspicion that the individual is involved in criminal activity. *State v. Logan*, 914 S.W.2d 806, 808 (Mo.App. 1995).

*State v. Slavin*, 944 S.W.2d 314, 317–18 (Mo.App.1997).

Appellant argues that nervousness is not a basis for such a suspicion, citing *State v. Slavin, supra.* She makes the same argument concerning the presence of fast food wrappers and a cooler and water jug, citing *State v. Smith*, 926 S.W.2d 689 (Mo. App.1996). She also contends that nervousness and a fast food bag do not give rise to such a suspicion, citing *State v. Woolfolk*, 3 S.W.3d 823 (Mo.App.1999). These cases can be distinguished from the instant case.

In *Slavin*, the principal basis for suspicion asserted by the officer was the defendant's refusal to consent to a search. In *Smith*, the principal dispute was whether the defendant gave his consent to search. The trial court found the state did not carry its burden of proving a voluntary consent and sustained the motion. In *Woolfolk*, the officer based his suspicion on the defendant's conduct after the traffic stop had been completed and defendant's documents returned to him. It was then the officer asked for consent to search,

which was given only after repeated requests and being told that if he did not consent to a search, he would have to remain at the scene until the canine unit arrived.

■ More fundamentally, appellant's argument does not take into consideration the standard by which the reasonableness of Funderburk's suspicion is to be measured.

When evaluating the validity of a stop, the trial court must consider the "totality of the circumstances." *Factors which may be consistent with innocent conduct when considered alone, may, when taken together, amount to reasonable suspicion. Sokolow,* 490 U.S. at 9–10, 109 S.Ct. at 1586–87, 104 L.Ed.2d at 11–12. " '[T]he relevant inquiry is not whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of noncriminal acts.' " *Id.* at 10, 109 S.Ct. at 1587, 104 L.Ed.2d at 12 (quoting *[Illinois v.] Gates,* 462 U.S. [213] at 243–44 n. 13, 103 S.Ct. at 2359 n. 13, 76 L.Ed.2d at 552 n. 13) [ (1983) ]. Thus, for example, nervousness can be a factor supporting reasonable suspicion, see *[Florida v.] Royer,* 460 U.S. [491] at 493 n. 2, 502, 103 S.Ct. at 1322 n. 2, 1326–27, 75 L.Ed.2d at 233 n. 2, 239 [ (1983) ], and even probable cause. *Burkhardt,* 795 S.W.2d at 405; *State v. Dixon,* 809 S.W.2d 116, 118–19 (Mo.App.1991). On the other hand a trial court, having heard the testimony, may assess the extent and significance of defendant's nervousness and determine that the nervousness described does not give rise to an objective reasonable suspicion. [*U.S. v.] Walker,* 933 F.2d [812] at 817 [ (10th Cir.1991) ]; *State v. Donohoe,* 770 S.W.2d 252, 258 (Mo.App.1989); *United States v. White,* 890 F.2d 1413, 1418 (8th Cir.1989); *United States v. Tapia,* 912 F.2d 1367, 1371 (11th Cir.1990). *State v. Stevens,* 845 S.W.2d 124, 129 (Mo. App.1993) (emphasis added).

Funderburk testified that he determined to ask appellant further questions because of the following factors. Appellant was traveling east on I–44, a known drug corridor. *State v. Burkhardt, supra.* She was traveling from an area which is a known source of drugs to Cincinnati, a known destination for drugs. She was driving a rental vehicle under an agreement that was issued in the name of a second party and on the back her name was handwritten, a style which the officer had never seen before. *Cf. State v. Villa–Perez,* 835 S.W.2d 897 (Mo. banc 1992). She was extremely nervous, so much so that her hands shook as she answered questions. *State v. Burkhardt, supra.* The presence of the fast food wrappers and cooler were indicative of appellant trying to make a fast trip. This was confirmed by the short duration of the rental agreement. Based upon his considerable experience, these factors were strongly indicative to Funderburk that appellant was a "mule" for the distribution of drugs.

The reasonableness of that conclusion is to be determined upon the basis of the totality of the circumstances. This court finds that when so measured, Funderburk's determination to ask further questions had an objectively reasonable basis for extending the length of the stop. *Cf. State v. Burkhardt, supra; State v. Day,* 900 S.W.2d 656 (Mo.App.1995).

Moreover, Funderburk testified he asked to search the Blazer upon returning the rental agreement and her license to appellant. "Appellant's consent to search occurred during the time reasonably necessary to carry out the purposes of the traffic stop." *State v. Day, supra,* at 659. There is no evidence that consent was

given as the result of fraud or duress. It was a valid basis for the search and seizure.

 Funderburk testified that upon the return of the license and rental agreement, appellant was free to go if she chose to do so, although he did not tell her so. Appellant testified she did not feel free to go and that Funderburk did not tell her that she was. She argues that as the purpose of the traffic stop had been completed, and Funderburk did not tell her she was free to go, Funderburk's request to search came when she had been illegally seized. "Further questioning following the conclusion of an investigative stop is allowed if the encounter has turned into a consensual one.... This change occurs when a reasonable person in the suspect's position would feel free to leave." *State v. Scott*, 926 S.W.2d 864, 869 (Mo.App.1996). A requirement that Funderburk tell appellant she was free to go has been rejected in this state. "Moreover, we will continue to make that determination based on the unique circumstances and facts of each case by asking the question whether a reasonable person would feel free to leave." *Id.* at 870. There is no objective basis for appellant's feeling and this argument has no merit.

The standard for this court's review of the decision of the trial court has been clearly stated.

> Appellate review of a motion to suppress is limited to determining whether sufficient evidence exists to sustain the trial court's holding. *State v. Wise*, 879 S.W.2d 494, 503 (Mo. banc 1994), [*cert. denied*, 513 U.S. 1093, 115 S.Ct. 757, 130 L.Ed.2d 656 (1995)]. If the trial court's ruling is plausible in light of the record viewed in its entirety, the appellate court may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the

evidence differently. *State v. Milliorn*, 794 S.W.2d 181, 184 (Mo. banc 1990). We defer to the trial court's evaluation of the credibility of the witnesses and the weight of the evidence. *State v. Villa–Perez*, 835 S.W.2d 897, 902 (Mo. banc 1992).

*State v. Lord*, 43 S.W.3d 888, 890–91 (Mo. App.2001).

This court finds there was no error, plain or otherwise. The judgment of the trial court is affirmed.

PREWITT, P.J., and PARRISH, J., concur.