STATE of Missouri, Appellant,

v.

**Julius BRADSHAW, Respondent.**

No. ED 81556.

Missouri Court of Appeals, Eastern District, Division One.

March 4, 2003.

Gary J. Richards, Troy, MO, for Appellant.

Thomas Gabel, Troy, MO, for Respondent.

GEORGE W. DRAPER III, Judge.

Julius Bradshaw (hereinafter, "Defendant") was charged with one count of possession of a controlled substance. Defendant filed a motion to suppress the evidence seized during a search of his vehicle. The trial court granted Defendant's motion, and the State filed an interlocu-

tory appeal pursuant to Section 547.200.1 RSMo (2002)[1] from the trial court's order. We affirm.

The facts are essentially undisputed and are as follows: Detective Raymond M. Floyd (hereinafter, "Det.Floyd") of the Troy City Police Department observed a vehicle parked on the side of the road in Lincoln County. Det. Floyd recognized the passenger in the vehicle, whom he identified as Duane Bowles (hereinafter, "Bowles"). Det. Floyd called dispatch, which confirmed Det. Floyd's belief that Bowles had an outstanding warrant for his arrest based on his failure to appear for a driving while intoxicated charge.

Upon learning of the outstanding warrant, Det. Floyd attempted to stop the vehicle in order to arrest Bowles. Defendant, the driver, pulled away from the side of the road before Det. Floyd could stop the vehicle. Det. Floyd activated his emergency siren, and the vehicle eventually stopped three blocks away. Defendant and Bowles exited the vehicle upon stopping, but Det. Floyd directed them to return to the vehicle in order for him to obtain backup.

Det. Floyd approached the vehicle and asked Bowles to step out of the vehicle and placed him under arrest. Bowles was placed in the back of the patrol car. Det. Floyd then returned to Defendant's vehicle and had him exit. Defendant's name was checked by dispatch, and Defendant had no outstanding warrants. However, Det. Floyd proceeded to search Defendant's car, stating he was searching it incident to Bowles's arrest.

Det. Floyd recovered a small cigar tube located in a cup holder in the front compartment of the vehicle. The tube contained plant material and a white-colored

1. All further statutory references are to RSMo (2002) unless otherwise indicated.

residue. When Det. Floyd questioned Defendant as to whether the tube belonged to him, he mumbled a response and shook his head. Det. Floyd noticed Defendant had something in mouth and when he asked him what it was, Defendant began to chew up whatever the object was in his mouth.

Defendant was arrested and charged with possession of a controlled substance. Defendant's trial counsel filed a motion to suppress the seized evidence on May 6, 2002. A hearing was held on July 2, 2002. Det. Floyd admitted Defendant was not engaged in any illegal activity when he initially observed him parked on the side of the road. Moreover, Det. Floyd testified Defendant did not commit any traffic violations, and he did not issue him any traffic tickets.

Det. Floyd further stated that after Bowles was arrested and secured in the patrol car, Defendant was not free to leave because he needed to conduct a search of Defendant's vehicle pursuant to Bowles's arrest. Det. Floyd admitted he did not ask for Defendant's consent to search the vehicle, he did not advise Defendant of his rights, and he questioned Defendant while he conducted the search of the vehicle.

The trial court issued its written ruling granting Defendant's motion to suppress on July 24, 2002. The State now seeks this interlocutory appeal.

■■■■ At a suppression hearing, the State bears both the burden of producing evidence and the risk of nonpersuasion to show by a preponderance of the evidence that the motion to suppress should be overruled. *State v. Milliorn,* 794 S.W.2d 181, 184 (Mo. banc 1990). When reviewing a motion to suppress, we examine the record made at the motion to suppress hearing as well as the trial record. *State v. Collins,* 816 S.W.2d 257, 258 (Mo.App. E.D.1991). In so reviewing, we view the facts in the light most favorable to the order challenged on appeal. *State v. Riddle,* 843 S.W.2d 385, 386 (Mo.App. E.D. 1992).

■■■■ If neither party disputes the facts, whether the trial court was correct in its ruling must be measured solely by whether the evidence is sufficient to sustain the findings. *State v. Taylor,* 965 S.W.2d 257, 261 (Mo.App. E.D.1998)(citing *State v. Franklin,* 841 S.W.2d 639, 641 (Mo. banc 1992)). While we "may not substitute our discretion for that of the trial court, and may not reverse even if we believe we would have weighed the evidence differently," we must "consider the ruling in light of the proper application of the precepts of the Fourth Amendment." *Taylor,* 965 S.W.2d at 261 (quoting *State v. Stevens,* 845 S.W.2d 124, 128 (Mo.App. E.D.1993)).

The Fourth Amendment to the United States Constitution preserves the right of citizens to be free from unreasonable searches and seizures. U.S. Const. Amend. IV.

■■■■ Generally, a search or seizure is only permissible if there is probable cause to believe a person has committed or is committing a crime. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). For Fourth Amendment purposes, a "seizure" occurs "whenever a police officer accosts an individual and restrains his freedom to walk away." *Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Not all "personal intercourse" between the police and individuals involves "seizures" of persons. *Id.* at 19 n. 16, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Id.* In other words, a seizure occurs "only if, in view of all the

circumstances surrounding the incident, a reasonable person would have believed that he [or she] was not free to leave." *State v. Werner*, 9 S.W.3d 590, 600 (Mo. banc 2000)(quoting *Michigan v. Chesternut*, 486 U.S. 567, 573, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988)).

However, the United States Supreme Court has held that the Fourth Amendment allows a brief investigative detention if the officer has a reasonable suspicion, based on specific and articulable facts, that the person is involved in criminal activity. *Terry*, 392 U.S. at 21, 88 S.Ct. at 1880; *Franklin*, 841 S.W.2d at 641. In determining whether the seizure and search were unreasonable, a court must determine "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20, 88 S.Ct. at 1879.

A routine traffic stop based upon the violation of state traffic laws is a justifiable seizure under the Fourth Amendment. *State v. Slavin*, 944 S.W.2d 314, 317 (Mo.App. W.D.1997). "[S]o long as the police are doing no more than they are legally permitted and objectively authorized to do, [the resulting stop or] arrest is constitutional." *Id.* However, the fact that the police may detain a person for a routine traffic stop does not justify indefinite detention. The detention may only last for the time necessary for the officer to conduct a reasonable investigation of the traffic violation. *State v. Woolfolk*, 3 S.W.3d 823, 829 (Mo.App. W.D.1999)

During a routine traffic stop, an officer may request a driver's license and vehicle registration, run a computer check, and issue a citation. *Riddle*, 843 S.W.2d at 387. When the driver has produced a valid license and proof that he or she is entitled to operate the car, he or she must be allowed to proceed on his or her way, without being subject to further delay by police for additional questioning. *Id.* Any detention that "extends beyond the time reasonably necessary to effect its initial purpose, the seizure may lose its lawful character" unless reasonable suspicion of another crime arises. *Id.*, (quoting *State v. Hyland*, 840 S.W.2d 219, 221 (Mo. banc 1992)).

The State claims the trial court erred in granting Defendant's motion to suppress in that the search was legal because it was pursuant to an occupant's arrest as per the dictates of *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). Defendant argues that the trial court correctly suppressed the evidence because the search was improper as per the fundamental principles established in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), which he claims were not altered by the holding in *Belton*.

In *Belton*, a New York Highway Patrol officer stopped a car for traveling at an excessive rate of speed. Four men, including Belton, were in the car. *Belton*, 453 U.S. at 455, 101 S.Ct. at 2861. The officer smelled burnt marijuana and saw an envelope labeled "Supergold," which he associated with marijuana, lying on the floor of the car. *Id.* at 456, 101 S.Ct. at 2862. Upon questioning, he discovered that none of the four men owned the car or were related to the owner. *Id.* The officer arrested all four men for possession of marijuana.

After patting down the men and separating them, the officer picked up the envelope and found that it contained marijuana. *Id.* He then proceeded to search the men and the passenger compartment of the car, where he found Belton's leather jacket. *Id.* He unzipped one jacket pocket and discovered cocaine. *Id.* Belton was

charged with criminal possession of a controlled substance. *Id.* Belton moved to suppress the cocaine, and the trial court overruled his objection. Belton pleaded guilty to a lesser charge but preserved his constitutional claim. *Id.*

The Supreme Court upheld the search, holding that when a police officer has made a lawful custodial arrest of an occupant of an automobile, the officer may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile. *Id.* at 460, 101 S.Ct. at 2864. The Court relied on *Chimel* for the principle that this type of search was justified incident to a lawful custodial arrest "because of the need 'to remove any weapon that [the arrestee] might seek to use in order to resist arrest or effect his escape' and the need to prevent the concealment or destruction of evidence." *Belton,* 453 U.S. at 457, 101 S.Ct. at 2862 (quoting *Chimel,* 395 U.S. at 763, 89 S.Ct. at 2040). Further, the Court stated the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within the reach of the arrestee, so also will the containers in it be within his or her reach. *Belton,* 453 U.S. at 460, 101 S.Ct. at 2864.

We find *Belton* factually distinguishable, and therefore, not applicable to the instant case. In this case, Defendant was not stopped for a traffic violation, as were the men in *Belton.* Moreover, Defendant owned his vehicle and was able to produce a valid license and registration. In *Belton,* none of the men owned the car or were related to the car's owner. Here, Det. Floyd admitted Defendant was not engaged in any illegal activity when he initially observed him parked on the side of the road, he did not commit any traffic violations, he did not issue Defendant any traffic tickets, and Defendant had a clean record. In contrast, the police officer in *Belton* who stopped the vehicle developed a new factual predicate for developing reasonable suspicion where he smelled burnt marijuana and saw the envelope marked "Supergold" which he associated with marijuana. Here, Bowles was the only occupant arrested. The search of Defendant's vehicle in relation to Bowles's arrest for failing to appear on a driving while intoxicated charge would not yield any evidence that could be used against Bowles. *See State v. Witherspoon,* 460 S.W.2d 281, 284 (Mo.1970)(stating such a search must be bona fide for articles connected with the arrest already made). In *Belton,* all of the occupants were arrested for possession of a controlled substance, the evidence of which was discovered after a search of the car.

We find *State v. Taber,* 73 S.W.3d 699 (Mo.App.W.D.2002) more persuasive and factually analogous to the instant case. In *Taber,* a trooper observed a woman, (hereinafter, "Taber"), driving a vehicle that did not have a front license plate on the trailer it was towing. The trooper stopped the vehicle because of the alleged violation. As the trooper approached the vehicle, he noticed a Kansas license plate which he had been unable to see prior to stopping the vehicle. The trooper knew the trailer was no longer in violation of Missouri traffic laws, however, he engaged in a dialogue with Taber. *Id.* at 701–02.

The trooper informed Taber the reason for the stop was related to the license plate, but proceeded to ask for her license and registration. Upon running a computer check, the trooper discovered Taber had an outstanding misdemeanor warrant. The trooper arrested Taber and placed her in the back of his patrol car. While under arrest, as a "matter of courtesy" the trooper asked her if she wanted him to retrieve her purse. After indicating she did, the

trooper retrieved her purse and searched it. His search uncovered marijuana and $5,800 in cash. No other contraband was found in the vehicle. The trooper returned to the car and informed Taber she was under arrest for possession of marijuana. *Id.* at 702–03.

Taber filed a motion to suppress the marijuana and the cash, along with statements she made during her arrest. *Id.* at 703. The trial court overruled her motion, and she was convicted. Taber appealed, claiming the trial court erred in overruling her motions to suppress in that after the trooper stopped her vehicle and discovered no traffic violation, the purpose of the traffic stop was satisfied. *Id.* at 704. Taber argued since the trooper had no reasonable suspicion that she was guilty of any criminal wrongdoing to further detain her, his request to produce a license and registration was an unlawful seizure. The State conceded that the purpose of the stop was complete once the trooper discovered the valid Kansas license plate, but argued that the stop became consensual when Taber turned over her license and registration. *Id.* at 704.

The Western District overturned Taber's conviction after determining she was not free to leave after the trooper informed her that he erroneously stopped her. *Id.* at 706. After an extended discussion of the relevant law, the court stated "this circumstance was insufficient to convey to a reasonable person, who had been stopped for an apparent traffic violation, that he or she was free to go without complying with [the trooper's] request to produce her license and vehicle registration." *Id.* The court rejected the State's argument that an individual in Taber's situation should have known she was free to leave after the trooper's comment about why he stopped her, stating:

Common sense tells us that, as a rule, a motorist who is involuntarily stopped by a law enforcement officer, for whatever reason, is going to be very reluctant to leave the scene until it is perfectly clear that he or she is free to do so. "Certainly few motorists would feel free ... to leave the scene of a traffic stop without being told they might do so."

*Id.*, (quoting *Berkemer v. McCarty*, 468 U.S. 420, 436, 104 S.Ct. 3138, 3148, 82 L.Ed.2d 317 (1984)).

We find the instant case requires the same analysis. Here, the purpose of the stop to arrest Bowles had been complete prior to any vehicle search. Defendant had not committed a traffic violation when initially stopped, and he produced a valid license and registration. Det. Floyd checked Defendant's record and was informed he had no outstanding warrants. At this point, the traffic stop was complete, and Defendant should have been free to leave. However, Det. Floyd testified he was not free to leave, he was not under arrest, nor did he seek Defendant's consent to search his vehicle. There is nothing articulated in the record that would give Det. Floyd reasonable suspicion that Defendant was engaged in criminal activity beyond the stop. *See also State v. Young*, 425 S.W.2d 177 (Mo.1968)(driver detained beyond purpose of stop for alleged operation of a vehicle without a proper license plate when officer noticed proper plate, verified driver had a valid license and registration, but proceeded to search vehicle, thus discovering what he believed to be burglary tools); *State v. Riddle*, 843 S.W.2d 385 (Mo.App. E.D.1992)(no reasonable suspicion driver engaged in criminal activity beyond traffic stop when driver produced a valid license and rental agreement, and officer issued a warning); *State v. Woolfolk*, 3 S.W.3d 823 (Mo.App. W.D. 1999)(no reasonable suspicion to search vehicle after traffic violation when driver

produced valid license and registration, officer issued a warning, and returned paperwork; traffic stop complete at this point). Thus, the search of Defendant's vehicle was unlawful.

Therefore, we find the trial court did not err in granting Defendant's motion to suppress the evidence seized during the search of his vehicle. The judgment of the trial court is affirmed.

MARY K. HOFF, J., concurs.

ROBERT G. DOWD, JR., P.J., dissents in separate opinion.

ROBERT G. DOWD, JR., Presiding Judge, dissenting.

I respectfully dissent from the majority opinion. I would reverse the trial court's decision to suppress the evidence. It is my position, as well as the State's position, that this case is governed by the principles of *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). *Belton* stands for the established proposition that when an officer has made a lawful custodial arrest of the occupant of an automobile, "he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Id.* at 460, 101 S.Ct. 2860. Thus, once there is a lawful arrest of an occupant of the automobile, an officer can search the automobile incident to that arrest. Here, the purpose of the stop was to arrest Bowles pursuant to an outstanding warrant. Once the automobile stopped, the officer made a lawful arrest of Bowles pursuant to that outstanding warrant. Bowles was clearly an "occupant" of the automobile. The passenger compartment of the automobile was then searched incident to the lawful arrest of Bowles. The controlled substance was found in a cigar tube, a "container" as defined in *Belton,* located in the cupholder, which was inside the passenger compartment of the automobile. Because there is no challenge to the validity of Bowles's arrest, the search is justified under *Belton.*

The majority attempts to factually distinguish the present case from *Belton.* I do not believe *Belton* is distinguishable. The majority points out that Defendant was not stopped for a traffic violation, as were the men in *Belton.* The majority also points to the fact that none of the men in *Belton* owned the automobile, where Defendant owned the automobile and produced a valid driver's license and registration. The majority further states, "Defendant was not engaged in any illegal activity when he initially observed him parked on the side of the road, he did not commit any traffic violation, he did not issue Defendant any traffic tickets, and Defendant had a clean record." The majority contrasts the police officer in *Belton* developed a "new factual predicate" for developing reasonable suspicion when he smelled marijuana and saw the envelope marked "Supergold." The majority also points out that Bowles was the only occupant arrested. None of the majority's factual distinctions change the incontrovertible fact that Bowles was lawfully arrested by the officer and the officer had a right to search the automobile incident to that arrest under *Belton.* The majority seems to argue that an officer has to have reasonable suspicion for every occupant of the automobile and a lawful arrest of those occupants in order to perform a search of the automobile. I do not believe that is the proper application of *Belton.*

The trial court did not rely on nor discuss *Belton* and instead based its decision to suppress on the issue of whether the officer had a right to further detain Defendant. In its order, the trial court stated, "[t]he initial stop ended when Duane J. Bowles was arrested, and the officer had no authority to further detain the defen-

dant because he did not have reasonable suspicion that the defendant was engaged in criminal conduct." I believe the trial court misapplied the law in relying on *State v. Taber*, 73 S.W.3d 699 (Mo.App. W.D.2002). I do not believe this is a "detention" case like *Taber* and find the *Taber* case inapplicable. Under *Belton*, which is the applicable standard, the officer had a right to conduct a search of the automobile incident to the lawful arrest of one of its occupants. No reasonable suspicion was necessary to effectuate the search of the automobile when the search was incident to an arrest. The majority seems to focus on the reasonable suspicion exception to the warrant requirement of the Fourth Amendment. I believe the applicable exception to the Fourth Amendment warrant requirement in this case is the search incident to arrest exception. *See Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The cases cited by the majority, i.e., *State v. Young*, 425 S.W.2d 177 (Mo.1968), *State v. Riddle*, 843 S.W.2d 385 (Mo.App. E.D.1992), *State v. Woolfolk*, 3 S.W.3d 823 (Mo.App. W.D.1999), discussing reasonable suspicion are not applicable in this case. This is a case of a search incident to an arrest and it is a separate exception to the warrant requirement of the Fourth Amendment. There was no need for reasonable suspicion under the factual circumstances of this case.

Furthermore, the purpose of the stop was to effectuate the arrest of Bowles. The trial court concluded that the stop ended once Bowles was arrested and the officer needed reasonable suspicion in order to detain Defendant and conduct the search. Under the trial court analysis that the purpose of the stop ended at Bowles's arrest, there can never be a search incident to arrest when the purpose of the initial stop is to arrest an occupant of the automobile. This conclusion ignores the fundamental principles of searches incident to arrests.

I would reverse the trial court's suppression of the evidence seized from the automobile.