845 S.W.2d 124 (1993)
STATE of Missouri, Plaintiff/Appellant,
v.
Richard Del STEVENS, Defendant/Respondent.
No. 61978.
Missouri Court of Appeals, Eastern District, Division Four.
January 19, 1993.
*125 George Michael Archer, Asst. Pros. Atty., Clayton, for plaintiff/appellant.
Burton H. Shostak, Moline, Ottsen, Mauze, Leggat & Shostak, Clayton, for defendant/respondent.
*126 CRANE, Judge.
The state appeals pursuant to § 547.200 RSMo 1986 from the order of the trial court granting defendant's motion to suppress evidence seized from defendant's motor home after he was stopped for speeding and given a warning. We affirm.
On February 27, 1991 Trooper Wade Stuart of the Missouri Highway Patrol was operating a stationary radar on the shoulder of eastbound Interstate 44, one-half mile east of Antire Road in St. Louis County. At approximately 8:30 p.m., Stuart's radar picked up a large motor home traveling at 54 miles per hour. Stuart testified that the maximum speed limit on that stretch of Interstate 44 had been lowered for some time to 45 miles per hour due to extensive maintenance and construction and his captain had told him to enforce that speed limit. There was no evidence whether the lowered speed limit had been posted.
Stuart paced the motor home at 52 miles per hour for a short distance and then activated his red lights to signal the motor home to pull over. Stuart stopped in front of the motor home. After pulling to the side of the road, defendant Richard Del Stevens, the driver of the motor home, got out and met Stuart in front of the motor home. Stuart asked defendant for his driver's license and registration and informed defendant he had been pulled over for speeding. Stuart noticed that defendant looked extremely nervous, his face twitched, he blinked excessively, he avoided eye contact, and he exhibited many other nervous characteristics. After Stuart informed defendant that he would only issue a warning, he noticed that defendant did not seem to relax. Stuart testified that in his six and one-half years of experience as a state trooper he found that drivers tended to relax after being told they will only be issued a warning.
Stuart asked defendant to accompany him to the patrol car while he initiated checks on the registration and defendant's California driver's license. While he waited for the results of the checks, Stuart asked defendant some background questions. Defendant indicated that he was driving directly from northern California to visit his wife's family in Indianapolis, Indiana, but was taking a southern route. Defendant stated that both his and his passenger's wife and children were flying to Indiana because they did not want to make a long road trip. Defendant mentioned he was a winery worker from northern California earning $35,000 per year, his wife was a secretary at a small school district, and they owned their own home. Defendant informed Stuart the motor home cost more than $50,000 and only got six to eight miles per gallon of gasoline. Defendant also stated that he had known his passenger for eight years, but could not state his last name. Stuart could not understand how a family living in such a high cost of living area could afford the luxuries of a motor home or plane travel on his and his wife's income. He thought it "a little bit" "unusual" that defendant would take a longer route when the motor home got such low mileage. He thought it was "unusual" for a couple to buy a motor home that the wife did not like to travel in. He thought it "highly unusual" that defendant did not know his passenger's last name. Stuart testified "each and every event combined" made him "suspicious of the activity that was before me."
After completing the registration and license check, Stuart returned the driver's license to defendant, completed the warning, and allowed defendant to return to the motor home. Stuart then motioned for the passenger to come out of the motor home and sit in the patrol car. He asked defendant to sit in the front seat of the motor home while he talked to the passenger in the patrol car. Stuart wanted to verify defendant's responses, so he asked the passenger the same questions he had asked defendant. The passenger's answers conflicted in some respects from defendant's. He gave a departure date from California four days earlier than that given by defendant. The passenger stated that the pair had initially travelled to Austin, Texas with their wives, but without their children, and had stayed in Austin for several days. The passenger also did not know the first or last names of any of defendant's family or *127 in-laws, although defendant had said the passenger was very familiar with his family.
Because of defendant's nervousness, his failure to know his passenger's last name, and his passenger's conflicting answers, Stuart became "just about totally convinced" that the pair was engaged in criminal activity and called for another trooper. When the second trooper, Sean Moore, arrived, Stuart asked defendant to exit the motor home and asked whether he had guns, knives or drugs in the motor home. Defendant said no, but that he did have some knives. Stuart then asked whether he could search the motor home. After giving inconclusive answers for about five minutes, defendant finally agreed. However, when Moore started to enter the motor home, defendant rescinded his consent. At that time, Stuart testified he became "totally convinced" that the motor home contained some type of evidence to indicate criminal activity and called for the canine unit.
When the canine unit arrived, the dog alerted on the left side of the motor home near the luggage compartment. Stuart then arrested defendant and his passenger. Eventually 600 pounds of marijuana was discovered in the motor home.
Defendant and his passenger were each charged with drug trafficking in violation of § 195.223 RSMo (Cum.Supp. 1989). Both filed motions to suppress the physical evidence. The trial court heard the motion in the passenger's case first. After hearing the testimony of the sole witness, Trooper Stuart, and reviewing the parties' legal memoranda and cases, the trial court granted the passenger's motion. In his legal memorandum the passenger argued that any detention following the issuance of the traffic warning was unlawful and the use of the drug sniffing dog constituted an unreasonable search. At the hearing he provided the trial court with copies of the opinions in United States v. Walker, 933 F.2d 812 (10th Cir.), reh'g denied, 941 F.2d 1086, 1090 (10th Cir.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992), and United States v. Guzman, 864 F.2d 1512 (10th Cir.1988). Defendant submitted his motion to suppress on the record made in the passenger's case. The trial court granted defendant's motion to suppress physical evidence "for purposes of consistency" with its ruling on the passenger's case. The trial court did not make any findings of fact or conclusions of law in support of its ruling in either case.
On appeal the state first contends that the detention of the vehicle and its passengers constituted a "Terry stop" under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), until the point at which the dog alerted the officers to the presence of marijuana, at which point the officers had probable cause for a custodial arrest and search. For its second point the state contends that Walker, a federal appeals case which holds that the continued detention of a defendant following a traffic stop beyond the time necessary to issue a citation was an unreasonable seizure because the defendant's nervousness did not give rise to a reasonable suspicion of criminal activity to justify continuing detention, does not apply in Missouri. The state also argues that, in any event, Walker is factually distinguishable because Stuart had grounds for reasonable suspicion before he issued the traffic warning.
Defendant responds that the initial stop for speeding was unwarranted because no speed limit was posted. Defendant further responds that even if defendant had committed a speeding violation, the arresting officer was required to allow defendant to proceed after giving him a warning, unless he had reasonable suspicion of criminal activity which would warrant further detention. Defendant argues that the officer had no such reasonable suspicion at the point he issued the warning and therefore had no authority to continue to detain defendant or interview his passenger.
We do not reach the question of whether the initial stop for speeding was unwarranted because we find that the trial court did not clearly err in suppressing the evidence because there was no basis for further detention after the officer gave defendant *128 the warning. As a federal appeals court decision, Walker is available to us as persuasive authority. Moreover, as will be developed further in this opinion, it has previously been applied by this court.
Once a motion to suppress has been filed, the state bears the burden of going forward with the evidence and the risk of nonpersuasion to show by a preponderance of the evidence that the motion should be overruled. § 542.296.6 RSMo 1986; State v. Milliorn, 794 S.W.2d 181, 184 (Mo. banc 1990). We will not reverse the trial court's decision on a motion to suppress unless it is clearly erroneous. Id. at 183. Under this standard we review the factual findings only to determine if they are supported by substantial evidence. State v. Ritter, 809 S.W.2d 175, 177 (Mo. App.1991). This standard of review gives deference to the trial court's ability to weigh the credibility of the witnesses. Milliorn, 794 S.W.2d at 183-84. We view the facts in the light most favorable to the order challenged on appeal and disregard all contrary evidence and inferences. State v. Blair, 691 S.W.2d 259, 260 (Mo. banc 1985). We may not substitute our discretion for that of the trial court, State v. Burkhardt, 795 S.W.2d 399, 404 (Mo. banc 1990), and may not reverse even if we believe we would have weighed the evidence differently. Milliorn, 794 S.W.2d at 184. We do, however, consider the ruling in light of the proper application of the precepts of the Fourth Amendment. Florida v. Royer, 460 U.S. 491, 493, 103 S.Ct. 1319, 1321, 75 L.Ed.2d 229, 233 (1983).
A vehicle stop to issue a written traffic warning for speeding is a seizure within the meaning of the Fourth and Fourteenth Amendments. State v. Hyland, 840 S.W.2d 219, 220-221 (Mo. banc 1992). If the detention extends beyond the time reasonably necessary to effect its initial purpose, the seizure may lose its lawful character unless a new factual predicate for reasonable suspicion is found during the period of lawful seizure. Id. at 221.
In Hyland the trooper had stopped defendant for speeding and decided to give him a written traffic warning. When defendant handed his license to the trooper, he nervously volunteered that he was moving from New York to Arizona. The trooper asked to see the car's registration papers and the defendant gave him his "drive away" contract. While holding these documents the trooper noted that defendant's demeanor was nervous and uneasy and that he had no personal possessions in the car, which the trooper thought was unusual for a person making a permanent move across the country. The trooper asked about the possessions. Defendant told him they were in the trunk and, upon request, gave the trooper permission to look in the trunk.
The supreme court held that the questions about defendant's personal possessions occurred as, or immediately after, defendant handed the trooper the documentation the trooper needed to complete the written traffic warning and thus the consent to search the trunk occurred during the time reasonably necessary to carry out the purposes of the traffic stop. Id. at 221. The supreme court accordingly affirmed the trial court's denial of the motion to suppress.
In this case, however, the trooper completed the registration and license check, returned defendant's driver's license, gave him the warning, and told defendant to go back to his vehicle. At this point the time reasonably necessary to effect the initial purpose of the traffic stop concluded.
During a routine traffic stop, an officer may `request a driver's license and vehicle registration, run a computer check, and issue a citation. When the driver has produced a valid license and proof that he is entitled to operate the car, he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning.'
State v. Riddle, 843 S.W.2d 385, 387 (Mo. App.1992) (quoting Guzman, 864 F.2d at 1519). Any continued detention was unlawful unless new factual predicates for reasonable suspicion had been found during the period of lawful seizure. Riddle, 843 S.W.2d at 387 (citing Hyland, 840 *129 S.W.2d at 221 and Walker, 933 F.2d at 816).
In order to have continued to detain defendant after issuing the warning, the officer must have a "reasonable suspicion supported by articulable facts that criminal activity `may be afoot,' even if the officer lacks probable cause." United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1, 10 (1989) (quoting Terry, 392 U.S. at 30, 88 S.Ct. at 1884, 20 L.Ed.2d at 911). "The officer, of course, must be able to articulate something more than an `inchoate and unparticularized suspicion or "hunch."` "Id. (quoting Terry, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909). There must be "`some minimal level of objective justification' for making the stop," id. (quoting INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247, 255 (1984)), but the level of suspicion is less demanding than that for probable cause, which requires a "`fair probability that contraband or evidence of a crime will be found.'" Id. (quoting Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983)).
The state argues that the following circumstances gave rise to reasonable suspicion: 1) defendant was very nervous and did not relax when told he was being given a warning; 2) defendant's stated salary of $35,000 did not seem adequate to support a mobile home worth $50,000; 3) defendant was taking a longer than necessary route to Indianapolis from northern California; and 4) although defendant said he had known his passenger for eight years, he did not know his last name. Stuart testified that each of these circumstances was to some degree "unusual" and that together they made him "suspicious of the activity."
When evaluating the validity of a stop, the trial court must consider the "totality of the circumstances." Factors which may be consistent with innocent conduct when considered alone, may, when taken together, amount to reasonable suspicion. Sokolow, 490 U.S. at 9-10, 109 S.Ct. at 1586-87, 104 L.Ed.2d at 11-12. "`[T]he relevant inquiry is not whether the particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of noncriminal acts.'" Id., at 10, 109 S.Ct. at 1587, 104 L.Ed.2d at 12 (quoting Gates, 462 U.S. at 243-44 n. 13, 103 S.Ct. at 235 n. 13, 76 L.Ed.2d at 552 n. 13). Thus, for example, nervousness can be a factor supporting reasonable suspicion, see Royer, 460 U.S. at 493 n. 2, 502, 103 S.Ct. at 1322 n. 2, 1326-27, 75 L.Ed.2d at 233 n. 2, 239, and even probable cause. Burkhardt, 795 S.W.2d at 405; State v. Dixon, 809 S.W.2d 116, 118-19 (Mo.App.1991). On the other hand a trial court, having heard the testimony, may assess the extent and significance of defendant's nervousness and determine that the nervousness described does not give rise to an objective reasonable suspicion. Walker, 933 F.2d at 817; State v. Donohoe, 770 S.W.2d 252, 258 (Mo.App.1989); United States v. White, 890 F.2d 1413, 1418 (8th Cir.1989); United States v. Tapia, 912 F.2d 1367, 1371 (11th Cir.1990).
"Whether a Fourth Amendment violation has occurred `turns on an objective assessment of the officer's actions in light of the facts confronting him at the time' and not on the officer's actual state of mind at the time the challenged action was taken." Maryland v. Macon, 472 U.S. 463, 470-71, 105 S.Ct. 2778, 2783, 86 L.Ed.2d 370, 378 (1985) (citations omitted). It is within the discretion of the trial court to determine whether the circumstances testified to by the officer provided a reasonable suspicion of criminal activity when considered together. We may not disturb the trial court's determination unless it is clearly erroneous. We do not find that the trial court clearly erred in its implicit finding that the observations made by the trooper prior to completing the warning did not point to specific and articulable facts which, when taken together, create a suspicion that defendant was engaged in criminal activity.
The judgment of the circuit court is affirmed.
CARL R. GAERTNER, P.J., and SIMON, J., concur.