STATE of Missouri, Respondent,

v.

Curt BIZOVI, Appellant.

No. ED 82057.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 16, 2004.

Jo Ann Rotermund, St. Louis, MO, for appellant.

Andrea K. Spillars, Leslie McNamara (co-counsel), Jefferson City, MO, for respondent.

## *OPINION*

GLENN A. NORTON, Presiding Judge.

Curt Bizovi appeals the judgment entered on his convictions for possession of a controlled substance with intent to distribute and possession of drug paraphernalia. He claims that the trial court erred by refusing to suppress evidence seized after Bizovi was stopped for a traffic violation. We affirm.

### I.  BACKGROUND

Bizovi was stopped for following another vehicle too closely. The officer testified that when he approached Bizovi's car, he noticed a cooler, laundry basket, duffle bag, road atlas and fast food wrappers inside and that the car had Nevada license plates. Bizovi appeared very nervous while producing identification and answer-

ing the officer's questions. The officer testified that Bizovi's hands were shaking, he was stuttering and his voice was trembling. Based on the officer's training and experience, Bizovi's nervousness was greater than that of most people he stops for a traffic violation. The officer also noticed that Bizovi had a thick stack of money with a $100 bill on top. Bizovi went back to the patrol car with the officer, continuing to act very nervously. When asked why he was nervous, Bizovi told the officer that nothing good ever comes out of being stopped.

While waiting for responses to registration, license and criminal history checks, the officer asked Bizovi about his trip. Bizovi told the officer that he was going from Las Vegas to the Detroit area and that he was driving a friend's car because his was in poor condition. He explained that he preferred to drive than to fly. Bizovi had been driving for three days at that point and planned to stay in Michigan about a week. He also claimed, however, that he would be starting classes in Las Vegas in just four days. Bizovi also told the officer that he was unemployed.

The officer testified that, based on Bizovi's statements and his own observations up to that point, he suspected that Bizovi was involved in some type of criminal activity. He stated that the few clothes he saw in Bizovi's car seemed insufficient for the almost two-week trip. At trial, the officer also noted that it was January, but Bizovi's bag and cooler were not large enough to contain the heavy, bulky clothing he would need on a trip to Michigan in the winter. The officer was also suspicious because Bizovi was travelling from the southwestern part of the United States, a known drug source, to the Detroit area, one of the top three destinations for drugs.

After the checks revealed no problems with Bizovi's license, registration, or criminal history, the office gave him a warning and told him the traffic stop was over. Bizovi got out of the patrol car, and the officer followed, asking Bizovi if there was anything in his car that could be considered illegal. Bizovi said no. The officer explained that although he believed he had reasonable suspicion already to detain Bizovi based on his observations during the traffic stop, he preferred to get consent to perform the search. When Bizovi refused to consent, the officer told him he was going to detain him until a drug-detecting dog arrived. After the dog's search, the officer seized six bundles of marijuana and miscellaneous paraphernalia.

The trial court denied Bizovi's pre-trial motion to suppress and his objection at the bench trial to the introduction of any evidence obtained after the initial traffic stop concluded. The court found Bizovi guilty, and he appeals.

## II. DISCUSSION

On review of the trial court's decision not to suppress evidence, we view the facts and any reasonable inferences therefrom in the light most favorable to that decision and disregard any contrary evidence and inferences. *State v. Lewis,* 17 S.W.3d 168, 170 (Mo.App. E.D.2000). "If the trial court's ruling is plausible in light of the record viewed in its entirety, this court may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* We will only reverse if the ruling is clearly erroneous. *State v. Milliorn,* 794 S.W.2d 181, 183 (Mo. banc 1990). Nevertheless, we must consider whether the court's decision is a proper application of Fourth Amendment precepts. *State v. Stevens,* 845 S.W.2d 124, 128 (Mo.App. E.D.1993).

Ordinarily, the police must have probable cause to believe that a person has committed or is about to commit a crime to conduct a lawful search or seizure under the Fourth Amendment of the United States Constitution. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). But a minimally intrusive form of seizure—the so-called investigative *Terry* stop—is permissible if the police officer has a reasonable suspicion supported by articulable facts that the person stopped is engaged in criminal activity. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Whether the facts amount to reasonable suspicion is a question of law that we review *de novo. State v. Berry,* 54 S.W.3d 668, 672 (Mo.App. E.D.2001).

Bizovi concedes that the officer was authorized to stop his vehicle and detain him to give him a warning for the traffic violation. *See Stevens,* 845 S.W.2d at 128. But "[i]f the detention extends beyond the time reasonably necessary to effect its initial purpose, the seizure may lose its lawful character unless a new factual predicate for reasonable suspicion is found during the period of lawful seizure." *Id.* Bizovi argues that the officer did not have reasonable suspicion to detain him after he was given the warning concluding the traffic stop. We disagree.

The totality of the circumstances and an objective assessment of the officer's actions in light of the facts confronting him at the time guide the evaluation of reasonable suspicion. *Id.* at 128; *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). Factors that may be consistent with innocent conduct when considered alone may amount to reasonable suspicion when taken together. *Ma-*

*ryland v. Macon,* 472 U.S. 463, 470–71, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985). For example, nervousness alone cannot provide reasonable suspicion for further detention, but it can be considered as one factor in the totality of the circumstances. *State v. Weddle,* 18 S.W.3d 389, 394 (Mo.App. E.D. 2000). The extent and significance of a suspect's nervousness is for the trial court to determine. *Stevens,* 845 S.W.2d at 128.

Here, Bizovi's nervousness was not the only articulated reason for the detention. Bizovi was not driving his own car, and his story as to the timing of his trip and his plan to start classes was improbable. Bizovi claimed to be unemployed, but was taking a cross-country trip and appeared to have a large amount of cash.[1] He had what appeared to be inadequate luggage and clothing for this trip, and the fast food wrappers and cooler indicated that he was driving straight through. Bizovi was also travelling from a known drug source area to a known drug destination. Standing alone, each of these facts may be consistent with the behavior of innocent travelers. But, taken together, they provided a new factual predicate for the officer's reasonable suspicion that Bizovi was engaged in criminal activity and justified further detention.

Similar circumstances have been found to support detention after an initial traffic stop. In *State v. Logan,* the detention was proper based on the officer's testimony that defendant was very nervous, that the defendant's explanation about the trip to New York was improbable and that the origin of his trip was a known source of drugs. 914 S.W.2d 806, 809 (Mo.App. W.D.1995). In *State v. Day,* the court

---

1. It is irrelevant that later it was determined that the stack of money actually contained only $152. It was objectively reasonable, based on what he knew at the time, for the officer to conclude that the large stack of cash topped with a $100 bill was a large amount of money.

found that the following factors amounted to reasonable suspicion: the defendant was traveling from a known drug source area to a known drug destination in a rental car, the defendant appeared extremely nervous and the short rental period, fast food wrappers and cooler indicated that this was a fast trip. 87 S.W.3d 51, 55 (Mo.App. S.D.2002).

The cases on which Bizovi relies, on the other hand, are distinguishable. In *State v. Slavin,* the court found that the reasons articulated by the officer for his suspicion were contradictory, changed over time and included facts learned after the initial stop concluded, which cannot be considered as a basis for further detention. 944 S.W.2d 314, 318–19 (Mo.App. W.D.1997). Moreover, the defendant's nervousness was the only significant factor articulated by the officer in that case; none of the other facts amounted to reasonable suspicion, even when considered together with the defendant's nervous behavior. *Id.* at 319 (keeping luggage in back seat instead of trunk, possessing title to car and travelling on route not known for drug trafficking). *Id.* Here, however, the officer's testimony at the suppression hearing and at trial were consistent, reasonable suspicion was based on facts learned during the initial stop, and Bizovi's nervousness was not the only significant factor supporting the detention.

*State v. Smith,* also cited by Bizovi, was analyzed under the probable cause standard, which requires more than the reasonable suspicion needed to support the detention in this case. 926 S.W.2d 689, 693–94 (Mo.App. S.D.1996). Thus, it is irrelevant to our discussion that the circumstances in *Smith,* however similar to this case, did not amount to probable cause. Nor does *State v. Riddle,* which affirmed a suppression order, support reversal in this case. 843 S.W.2d 385, 387 (Mo.App. E.D.1992). In that case, the offi-cer's observations were similar to those in this case and the trial court found them to be consistent with innocent travel. *Id.* This Court held that while such factors may also infer illegal conduct, the relevant inquiry is the degree of suspicion attached to innocent behavior and the trial court could have found that these facts did not provide reasonable suspicion. *Id.* Rather than require reversal here, *Riddle* highlights the deference we must give to the trial court's superior ability to weigh the evidence. As in *Riddle,* we cannot reverse the trial court's ruling even if we would have weighed the evidence differently.

In sum, we cannot say that it was clear error for the trial court to conclude that, when taken together, the officer's observations gave him reasonable suspicion to detain Bizovi beyond the initial traffic stop and to refuse to suppress this evidence.

Point denied.

### III. CONCLUSION

The judgment is affirmed.

KATHIANNE KNAUP CRANE, and MARY K. HOFF, JJ., concurring.