**STATE of Missouri, Respondent,**

v.

**Edgar T. KING, Appellant.**

**No. WD 63467.**

Missouri Court of Appeals,
Western District.

Nov. 30, 2004.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 1, 2005.

Application for Transfer Denied
April 5, 2005.

659

Ellen H. Flottman, Columbia, MO, for appellant.

Deborah Daniels, Jefferson City, MO, for respondent.

Before VICTOR C. HOWARD, P.J., ROBERT G. ULRICH and PATRICIA A. BRECKENRIDGE, JJ.

ROBERT G. ULRICH, Judge.

Edgar King appeals his convictions following a judge-tried case for attempting to produce a controlled substance, section 195.211,[1] possession of a controlled substance, section 195.202, and misdemeanor possession of a controlled substance, section 195.202.3. He was sentenced to two concurrent ten-year terms of imprisonment as a persistent drug offender for the

1. All statutory references are to RSMo 2000 unless otherwise stated.

felony convictions and to one year in the county jail for the misdemeanor conviction. Mr. King asserts that the trial court erred in not suppressing his statements and the evidence obtained at the scene of a vehicular stop because the Highway Patrol Trooper lacked particularized suspicion to justify the search of his person and his vehicle. He also claims as his second point that the trial court erred in finding him to be a persistent drug offender, section 195.275, because the offense used by the State to allege that he was a persistent drug offender occurred after the instant offense and not before as required by sections 558.021 and 558.016.

The judgment of convictions is reversed.

## Facts

Missouri Highway Patrol Trooper Thomas Hall stopped Edgar King on October 5, 2000, on a Missouri highway for exceeding the posted speed limit and for not wearing a seat belt in violation of state law. Mr. King was driving a motor vehicle at 66 miles per hour, six miles in excess of the 60 mile per hour speed limit. Trooper Hall had also received information earlier in the day from Trooper C.W. Craig that Mr. King had left a house in Kirksville that narcotics officers of the Highway Patrol were watching for methamphetamine activity and that Mr. King may have methamphetamine in his car or on his person. When confronted by Trooper Hall, Mr. King stated that the speedometer indicated that he was driving the vehicle at 64 miles per hour. Trooper Hall testified at trial before the court[2] that when he observed Mr. King seated in his vehicle, Mr. King avoided eye contact with him and his right foot "constantly twitched." Trooper

Hall asked Mr. King to accompany him to the Trooper's vehicle, and Mr. King complied. Trooper Hall observed Mr. King while he was seated in the state vehicle. Mr. King was "very fidgety, and his legs were in constant motion." Mr. King avoided eye contact while Trooper Hall questioned him.

After completing the summons, Trooper Hall returned Mr. King's driver's license to him with a copy of the summons. Trooper Hall then questioned Mr. King further. He asked Mr. King if he had been drinking alcoholic beverages or using drugs, and Mr. King responded by saying that he had not. Trooper Hall asked Mr. King to remove his sunglasses, and the Trooper performed the gaze nystagmus test. Mr. King's eyes demonstrated no nystagmus. Trooper Hall noted that even after Mr. King's eyes had time to adjust to the light without his sunglasses that they remained dilated. Trooper Hall was aware that dilated pupils are one sign that the person has used a stimulant. Trooper Hall then asked Mr. King if he had any drugs on his person or in his vehicle, and Mr. King denied that he did. When Trooper Hall then asked if Mr. King would mind if he searched his vehicle, Mr. King responded that he did, saying that he was in a hurry to get home. Trooper Hall informed Mr. King that because of Mr. King's actions, he intended to have his dog, which was in the vehicle with him, perform an exterior sniff of Mr. King's vehicle.

While by the driver's side front door, the dog responded in a way indicating the presence of a controlled drug within the vehicle. Trooper Hall then searched the vehicle and discovered a set of scales with marijuana residue. Mr. King was arrest-

---

**2.** Mr. King filed a motion through counsel to suppress the evidence obtained at the scene and to suppress his statements to Trooper Hall. The trial court denied the motion, and the evidence presented at the suppression hearing and additional exhibits introduced on the day of trial constituted the trial. Mr. King did not testify.

ed, and he was searched. Trooper Hall found a plastic baggy of marijuana on Mr. King's person and subsequently, a small bag containing .44 grams of methamphetamine under the front seat of Mr. King's vehicle.

Highway Patrol Trooper Craig transported Mr. King to the Adair County Sheriff's Department where he was advised of his Miranda rights. After acknowledging that he understood his rights, Mr. King explained, when asked about apparent burns on his left hand, that he had "frozen" his fingers together the preceding night while stealing anhydrous ammonia, a substance used to manufacture methamphetamine. He admitted that he had routinely manufactured methamphetamine for at least two years. He stated that he had used methamphetamine and other drugs for the previous sixteen years. He acknowledged injecting methamphetamine at 2:00 a.m. the morning of his arrest and to swallowing about a gram of methamphetamine when Trooper Hall stopped him on the highway. Mr. King stated that the small bag of methamphetamine found under the seat of his vehicle was not his.

Engaging in further conversation, Mr. King stated that he routinely stored the components required in his manufacture of methamphetamine on a country road, and he agreed to take Trooper Craig to his residence to obtain the methamphetamine base and an "HCL generator" located at his residence. He stated that he is given the ingredients to manufacture methamphetamine by others, and he "cooks" it in exchange for keeping some of the product.

Trooper Craig accompanied Mr. King to his residence, where Mr. King produced a plastic bucket containing a reddish colored chunky and powdered substance weighing 3.52 grams and containing methamphetamine. He also produced a marijuana cigarette that contained .54 grams of marijua-

na. Mr. King was released on his own recognizance.

Mr. King contacted Trooper Craig the next day and requested that the Trooper meet him at Big Creek Conservation area where he gave Trooper Craig approximately one gram of methamphetamine. Mr. King was subsequently charged as a prior and persistent drug offender. Following the trial, the court found Mr. King guilty of attempting to produce a controlled substance, possession of a controlled substance, and misdemeanor possession of a controlled substance as charged. Mr. King was sentenced to two concurrent terms of ten years on the felony convictions and to one concurrent year in the county jail for the misdemeanor possession conviction. Mr. King appeals.

### Point One

■ Mr. King asserts as his first point that the trial court erred in not suppressing his statements made at the scene of the vehicular stop and the incriminating evidence obtained there because the Highway Patrol Trooper lacked particularized suspicion to justify the search of his person and his vehicle after he gave Mr. King the summons for speeding and concluded the purpose for the stop.

### Standard of Review

■ The standard of review when determining if a trial court properly ruled on a motion to suppress evidence "is limited to a determination of whether there is sufficient evidence to support the court's ruling based on the complete record before the trial court." *State v. Slavin,* 944 S.W.2d 314, 317 (Mo.App. W.D.1997). The suppression hearing record and the trial record are considered. *State v. Deck,* 994 S.W.2d 527, 534 (Mo. banc), *cert. denied,* 528 U.S. 1009, 120 S.Ct. 508, 145 L.Ed.2d 393 (1999). Review is the abuse of discre-

tion standard. *State v. Milliorn,* 794 S.W.2d 181, 183 (Mo. banc 1990). Whether evidence existed from which the trial court could have arrived at a contrary conclusion is immaterial. *State v. Davalos,* 128 S.W.3d 143, 147 (Mo.App. S.D.2004); *State v. Kampschroeder,* 985 S.W.2d 396, 398 (Mo.App. E.D.1999). The trial court's ruling on a motion to suppress evidence will be affirmed unless it is clearly erroneous. *Milliorn,* 794 S.W.2d at 183. The trial court may not be reversed if its decision is plausible, even if the reviewing court is convinced that it would have weighed the evidence differently if sitting as the trier of fact. *Davalos,* 128 S.W.3d at 147. The facts are viewed in a light favorable to the ruling of the trial court. The issue of whether the Fourth Amendment and the state constitution have been violated, however, is a matter of law that is reviewed *de novo. Id.*

### Discussion of Point One

▇ Mr. King does not contest Trooper Hall's authority in stopping him while he was driving in excess of the posted speed limit and because he was not wearing a seat belt. He claims that Trooper Hall lacked legal authority to do anything more than to permit him to depart the scene of the stop when Trooper Hall concluded his business regarding the reason for the stop, returned Mr. King's driver's license, and gave him the summons for exceeding the speed limit. Mr. King claims that at that instant, Trooper Hall had no articulable factual basis to create a reasonable suspicion that he was involved in criminal activity and was compelled by law to permit him to depart without further inquiry.

▇ The Fourth Amendment of the United States Constitution guarantees the right of a citizen to be free from unreasonable searches and seizures. *State v. Barks,* 128 S.W.3d 513, 516 (Mo. banc

2004). The Fourth Amendment is not offended when a law enforcement officer briefly stops a person or automobile to investigate if the officer has reasonable suspicion, based upon specific and articulable facts, that the person or occupant of the vehicle is involved in criminal activity. *State v. Franklin,* 841 S.W.2d 639, 641 (Mo. banc 1992) (citing *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Brignoni–Ponce,* 422 U.S. 873, 882, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975)).

▇ A routine traffic stop based on the violation of a state traffic law is a justifiable seizure under the Fourth Amendment. *Barks,* 128 S.W.3d at 516. As long as the police are doing no more than they are legally permitted and objectively authorized to do, the resulting stop or arrest is constitutional. *Id.* (quoting *Slavin,* 944 S.W.2d at 317). The fact that a person may be detained for a routine traffic stop does not, however, justify indefinite detention. *Id.* The detention may only last for the time necessary for the law enforcement officer to conduct a reasonable investigation of the traffic violation. *Id.* (citing *State v. Woolfolk,* 3 S.W.3d 823, 828 (Mo.App. W.D.1999)). A reasonable investigation of a traffic violation may include "asking for the driver's license and registration, requesting the driver to sit in the patrol car, and asking the driver about his destination and purpose." *Id.* at 517 (quoting *State v. McNaughton,* 924 S.W.2d 517, 523 (Mo.App. W.D.1996), *overruled on other grounds by State v. Pond,* 131 S.W.3d 792 (Mo. banc 2004)). Once the traffic stop is completed, the person detained must be permitted to leave unless the law enforcement officer has an objectively reasonable suspicion, based on specific, articulable facts, that the person is involved in criminal activity. *Id.* The basis for a reasonable suspicion of criminal ac-

tivity must arise within the parameters of the traffic stop itself; suspicions based upon answers to questions asked after the stop is completed are irrelevant to the determination of whether specific, articulable facts support the suspicion and provide a justification for further questioning once the traffic stop is completed. *Id.* (quoting *Woolfolk*, 3 S.W.3d at 829).

In this case, Trooper Hall articulated three reasons for his further detention of Mr. King after issuing the traffic ticket. First, Mr. King exhibited signs of nervousness by avoiding eye contact with the officer while in his own car and in the patrol car. Mr. King also exhibited signs of nervousness in that his leg was twitching rapidly. Trooper Hall testified that he recognized the twitching as a condition associated with methamphetamine use, sometimes called "tweaking." Third, Trooper Hall had received information earlier that day from Trooper Craig that Mr. King was seen by a law enforcement officer leaving a house in Kirksville where suspected methamphetamine activity was occurring and that Mr. King may have the drug in his car or on his person. Mr. King argues that these facts do not support a reasonable suspicion that he was involved in criminal activity because no evidence was adduced as to the source of the information provided by Trooper Craig and because his lack of eye contact and twitching leg amounted to mere nervousness.

■■■■ Although a *Terry* stop or further detention after a traffic stop must be supported by reasonable suspicion, the detaining police officer need not always have personally observed facts amounting to reasonable suspicion. *State v. Miller*, 894 S.W.2d 649, 652 (Mo. banc 1995); *Franklin*, 841 S.W.2d at 641. The officer may receive information from another officer sufficient to authorize a stop or further

detention. *Miller*, 894 S.W.2d at 652; *Franklin*, 841 S.W.2d at 641. If an officer makes a *Terry* stop or further detains a person after a traffic stop in objective reliance on information provided by another officer, however, the information from the other officer must be based upon reasonable suspicion. *Miller*, 894 S.W.2d at 652; *Franklin*, 841 S.W.2d at 643 (both citing *United States v. Hensley*, 469 U.S. 221, 232, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985)).

■■■■ Although Trooper Hall testified that he had received information from Trooper Craig before he stopped Mr. King, Trooper Craig did not testify. No other evidence was introduced regarding the basis for Trooper Craig's conclusion that Mr. King had methamphetamine in his car or on his person except that Mr. King had been seen departing a residence where activity involving methamphetamine was suspected. No bases for such suspicion were disclosed except that he had been in the residence. Because Trooper Craig's communication to Trooper Hall cannot be imbued with reliability, the call alone did not provide reasonable suspicion by Trooper Hall to detain Mr. King after giving Mr. King the traffic violation citation. Therefore, the question is whether Trooper Hall, the detaining officer, possessed sufficient corroborating information independent of the prior police communication to justify further detention. *Miller*, 894 S.W.2d at 653 (citing *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)). "The totality of the circumstances and an objective assessment of the officer's actions in light of the facts confronting him at the time guide the evaluation of reasonable suspicion." *State v. Bizovi*, 129 S.W.3d 429, 432 (Mo.App. E.D. 2004).

■■■■ As discussed above, Trooper Hall articulated two other reasons in addition to Trooper Craig's phone call for his suspi-

cion that Mr. King was involved in criminal activity—Mr. King's lack of eye contact and his twitching leg. This nervousness by Mr. King, however, did not justify Trooper Hall's further detention of Mr. King after the initial traffic stop. Nervousness does not alone give rise to reasonable suspicion. *Bizovi*, 129 S.W.3d at 432; *Barks*, 128 S.W.3d at 517 (citing *Woolfolk*, 3 S.W.3d at 829). It can, however, be considered as one factor in the totality of the circumstances. *Bizovi*, 129 S.W.3d at 432. While Trooper Hall testified that twitching might be a sign of methamphetamine use, he did not testify, and no other evidence was offered, that twitching is exclusively a sign of methamphetamine use or even that twitching is rarely observed where drug use is not involved. On the contrary, Trooper Hall testified that when he first observed Mr. King's leg twitching, he believed it a sign that Mr. King was nervous. Only later, after the initial traffic stop and the resulting citation for a traffic violation had concluded, did Trooper Hall think that Mr. King's leg twitching "had to do more with . . . basically having used methamphetamine." Therefore, Mr. King's nervousness during the traffic stop was insufficient to create an objective reasonable suspicion that he was involved in criminal activity and, thus, did not justify his continued detention. *See, e.g. Slavin*, 944 S.W.2d at 319–21 (where defendant's nervousness, exhibited by wringing hands and sweating, did not provide police officer with reasonable suspicion of criminal activity).

Because the record is devoid of evidence that Trooper Craig's call was supported by reasonable suspicion or that Trooper Hall, absent the call, independently observed behavior to justify further detention of Mr. King after conclusion of the initial traffic stop, Mr. King's continued detention after Mr. King received the traffic violation citation and was otherwise free to leave was illegal. The evidence obtained as a result of the unlawful detention was inadmissible.

 The State argues that even if the continued detention of Mr. King after the initial traffic stop was illegal, the illegality became irrelevant in that some of the incriminating evidence that was seized was sufficiently attenuated from the illegal detention to purge any taint. Evidence discovered and later found to be derivative of a Fourth Amendment violation generally must be excluded as fruit of the poisonous tree. *Miller*, 894 S.W.2d at 654. The rule, however, is not absolute. *Id.* Instead, in determining whether the exclusionary rule applies, the question is whether, granting establishment of the primary illegality, the evidence to which objection is made was acquired by exploitation of the illegality or instead by means sufficiently distinguishable to be purged of the primary taint. *Id.* (quoting *State v. Lingar*, 726 S.W.2d 728 (Mo. banc 1987)).

The State argues that the methamphetamine Mr. King surrendered to Trooper Craig the day after the traffic stop was purged of the primary taint because Mr. King was released on his own recognizance the evening of his arrest, and he voluntarily contacted the law enforcement officer to inform him of his possession of the drugs and to surrender them over twenty-four hours after the traffic stop. Even if the State were correct, the evidence would not support Mr. King's conviction for possession of a controlled substance for which he was charged. Mr. King was charged as a prior and persistent offender with one count of attempting to produce a controlled substance for possessing an HCL generator and methamphetamine base obtained from his home on October 5, 2000; one count of possession of a controlled substance for possessing methamphetamine on October 5, 2000; and one count

of misdemeanor possession of a controlled substance for possessing less than 35 grams of marijuana on October 5, 2000. Mr. King was not, however, charged with possession of the "methamphetamine" that he informed Trooper Craig about on October 6, 2000, and surrendered on the same date. The only contraband substance introduced as evidence during trial was the substance seized on October 5, 2000. Trooper Craig's report reflected that Mr. King called him the day after the initial stop by Trooper Hall and gave him an additional gram of methamphetamine. No evidence was offered that the substance surrendered on October 6, 2000, was tested or that it actually was methamphetamine. Neither was the substance surrendered on October 6, 2000, listed on the lab report with the other drugs seized on October 5, 2000.

The detention of Mr. King following the conclusion of his receiving the citation for traffic violations following the initial stop was not justified by the totality of the attendant facts and was illegal. The trial court erred in denying Mr. King's motion to suppress and in admitting Mr. King's statements and the incriminating evidence. Mr. King's convictions are, therefore, reversed.[3]

HOWARD, P.J. and BRECKENRIDGE, J. concur.

---

**3.** Because point one is dispositive, point two need not be addressed.