**STATE of Missouri, Respondent,**

v.

**Ronald Eugene SMITH, Appellant.**

**No. SD 31465.**

Missouri Court of Appeals,
Southern District,
Division Two.

June 11, 2012.

Daniel E. Hunt, for Appellant.

Chris Koster & Laura E. Elsbury, for Respondent.

ROBERT S. BARNEY, Judge.

Ronald Eugene Smith ("Appellant") appeals his conviction following a bench trial for one count of the Class C felony of possession of a controlled substance, a violation of section 195.202.[1] The trial court sentenced Appellant as a prior and persistent offender to 10 years in the Missouri Department of Corrections. In his sole point relied on Appellant asserts the trial court erred in "not sustaining [his] motion to suppress and subsequent objection at trial to evidence seized after search of [his] vehicle. . . ." He urges the search of his vehicle was "conducted without probable cause and in violation of [his] constitutional rights in that officers had no reasonable suspicion to detain Appellant and the search of [his] vehicle was conducted without probable cause."[2]

Viewing the evidence in the light most favorable to the trial court's judgment, as we must, *Brown*, 332 S.W.3d at 284, the record reveals that on the evening of February 4, 2009, Officer Robert Buske ("Officer Buske") was contacted by another officer, Officer Dearborn, who was conducting a narcotics investigation on a private residence. Officer Dearborn observed a vehicle, a truck, leaving the residence under surveillance and alerted Officer Buske. When Officer Buske observed that same vehicle "making some traffic violations, specifically failure to signal . . ." on two separate occasions, he initiated a traffic stop of the vehicle, which was being driven by Appellant. When Officer Buske made contact with Appellant he "noticed that [Appellant] appeared to be very nervous, sweating. It was cool out, so [Officer Buske] found that unusual." Officer Buske recognized Appellant as someone he "had prior law enforcement encounters with" and noted Appellant appeared to be

---

1. All statutory references are to RSMo 2000.

2. We note that Appellant's point relied on only challenges "the trial court's denial of his motion to suppress; it does not challenge the actual admission of the evidence at trial." *State v. Brown*, 332 S.W.3d 282, 284 (Mo.App. 2011). However, this Court "may still exercise our discretion to review the substance of the complaint as long as [Appellant] objected when the evidence was introduced at trial and included the allegation of error in his motion

for new trial." *Id.*; *see State v. Cain*, 287 S.W.3d 699, 704 (Mo.App.2009). Here, Appellant renewed his objection at trial and was not required to file a motion for new trial. Rule 29.11(e)(2), Missouri Court Rules (2011). "Under these circumstances, we believe it is appropriate to review [his] point as if it had challenged the admission of the evidence at trial." *Brown*, 332 S.W.3d at 285; *see State v. Pike*, 162 S.W.3d 464, 472 (Mo. banc 2005).

"shaking a little bit." Officer Buske informed Appellant of the reason for the traffic stop and Appellant almost immediately "asked to use the bathroom." Officer Buske related that he "had prior knowledge [that Appellant was] on probation and parole for possession, distribution, sales, manufacture of a controlled substance, and with him leaving the other location of a known drug house ..." Officer Buske requested permission to search Appellant's vehicle. Appellant denied consent to search. Officer Buske then "requested a police canine dog come to [the] location" and Officer Mizer and his dog, Nitro, arrived "within ten or fifteen minutes."

In the interim, Officer Dearborn arrived and Appellant, who kept requesting to go the bathroom, turned down Officer Buske's invitation to go to the police department with Officer Dearborn so that he could use the bathroom in a "controlled environment." At that time Officer Buske also confirmed that Appellant was, in fact, on parole or probation for possession of a controlled substance. Officer Mizer then had Nitro sniff the outside of the vehicle where the dog alerted on the vehicle's rear, driver's side door. Once the dog alerted on the vehicle, the officers removed Appellant from the vehicle and began searching the interior. In the back seat of the vehicle the officers found a briefcase containing $20,000.00 and in the center console of the vehicle they found an envelope containing $10,000.00. Underneath the envelope they found a plastic mint container that contained numerous prescription medication pills.[3] Appellant was thereafter placed under arrest and transported to the police department. Once at the police department Appellant told Officer Buske that "he had purchased the prescriptions from a female and that he was nervous about being caught with them."

At the close of all the evidence, the trial court found Appellant guilty of the crime charged and he was sentenced as set out above. This appeal followed.

"When reviewing the trial court's overruling of a motion to suppress, this Court considers the evidence presented at both the suppression hearing and at trial to determine whether sufficient evidence exists in the record to support the trial court's ruling.'" *State v. Grayson*, 336 S.W.3d 138, 142 (Mo. banc 2011) (quoting *State v. Pike*, 162 S.W.3d 464, 472 (Mo. banc 2005)). "It is not this Court's province to substitute its discretion for that of the trial court, but instead from the record before us which encompasses all the circumstances, the total atmosphere of the case, we must decide only whether there was adequate evidence to support the trial court's action." *State v. Burkhardt*, 795 S.W.2d 399, 404 (Mo. banc 1990). As such, a reviewing court "defers to the trial court's determination of credibility and factual findings, inquiring only 'whether the decision is supported by substantial evidence, and it will be reversed only if clearly erroneous.'" *State v. Goff*, 129 S.W.3d 857, 862 (Mo. banc 2004) (quoting *State v. Edwards*, 116 S.W.3d 511, 530 (Mo. banc 2003)). "By contrast, legal 'determinations of reasonable suspicion and probable cause' are reviewed de novo." *Grayson*, 336 S.W.3d at 142 (quoting *Ornelas v. U.S.*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)).

**3.** During trial, Appellant's counsel again objected to the introduction of any evidence seized from the vehicle and this objection was overruled by the trial court for "the same reasons as indicated in [the] docket entry which [was] executed on or about October 5, 2009."

■ The Fourth Amendment of the United States Constitution and Article I, section 15 of the Missouri Constitution preserve the right of the people to be secure against unreasonable searches and seizures. *State v. Johnson,* 316 S.W.3d 390, 395 (Mo.App.2010); *State v. Rushing,* 935 S.W.2d 30, 34 (Mo. banc 1996). As such, subject to only a few specific and well-delineated exceptions, warrantless searches and seizures conducted without probable cause are deemed *per se* unreasonable. *Katz v. U.S.,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *State v. Martin,* 79 S.W.3d 912, 916 (Mo.App. 2002). The exception at issue here was first acknowledged by the United States Supreme Court in *Terry v. Ohio,* 392 U.S. 1, 30–31, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which established an exception permitting officers to make a brief, investigatory stop if they are able to point to "specific articulable facts" that, taken together with rational inferences from those facts, support a "reasonable suspicion" that illegal activity has occurred or is occurring. *Pike,* 162 S.W.3d at 472. "The exception's analysis is twofold: 1) whether the circumstances support a finding of reasonable suspicion justifying the initial stop and 2) whether the officer's actions were 'reasonably related in scope to the circumstances which justified the interference in the first place.'" *State v. Waldrup,* 331 S.W.3d 668, 673 (Mo. banc 2011) (quoting *Terry,* 392 U.S. at 19–20, 88 S.Ct. 1868). "The existence of 'reasonable suspicion' is determined objectively by asking 'whether the facts available to the officer at the moment of the seizure warrant a person of reasonable caution in the belief that the action taken was appropriate.'" *Id.* (quoting *Pike,* 162 S.W.3d at 473). "While this standard does not rise to that of the traditionally required probable cause, a proper *Terry* stop must be supported by 'some minimal level of objective justification,'"

*id.* (quoting *State v. Johnson,* 316 S.W.3d 390, 395 (Mo.App.2010)), and is determined by reference to the "'totality of the circumstances.'" *Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) (quoting *U.S. v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)).

■ Accordingly, in "determining whether the standard for 'reasonable suspicion' has been met, the court must evaluate all of the relevant circumstances and must consider them together, not in isolation." *Johnson,* 316 S.W.3d at 396. Further, "we are mindful that police officers are permitted to make use of all of the information available to them, and they may make inferences from that information that would not be made by members of the public, who lack access to the officer's knowledge, information, and training." *Id.*; *see U.S. v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). The reasonable suspicion that will justify the minimally intrusive *Terry* stop "is present when a 'police officer observes *unusual conduct* which leads him reasonably to conclude *in light of his experience* that criminal activity may be afoot.'" *Waldrup,* 331 S.W.3d at 673 (quoting *State v. Mack,* 66 S.W.3d 706, 709 (Mo. banc 2002)).

Here, Appellant was first legitimately stopped for two traffic violations. Already knowing that Appellant had just left a residence known for drug activity, Officer Buske first made contact with Appellant and was struck by Appellant's nervousness, sweating, and shaking. Further, he recognized Appellant from dealing with him on previous occasions and knew of his history of drug use and criminal activity. It was at this point that Officer Buske requested to search Appellant's vehicle and Appellant denied that request such that Officer Buske made the decision to

request a police dog to sniff the vehicle which was done in an expeditious manner.

It has been held that "officers may detain travelers involved in a routine traffic stop for 'matters unrelated to the traffic violation' if they have reasonable and articulable grounds for suspicion of illegal activity." *Waldrup*, 331 S.W.3d at 674 (quoting *State v. Maginnis*, 150 S.W.3d 117, 121 (Mo.App.2004)); *see also U.S. v. Lyons*, 486 F.3d 367, 371 (8th Cir.2007). In *State v. Deck*, 994 S.W.2d 527, 536 (Mo. banc 1999), the Supreme Court of Missouri observed that while a "detention and search and seizure is unlawful if conducted solely on the basis of an anonymous tip ...," police may, nevertheless, "properly consider such evidence if it is in conjunction with ... other, independent corroborative evidence suggestive of criminal activity." In *Deck*, police received an anonymous tip from an informant that Mr. Deck and his sibling were involved in a robbery and homicide, that they were armed and that they were driving a two-door gold car. *Id.* at 535. As a result of the tip, police went to Mr. Deck's last known address and observed him drive by alone in a two-door gold car. *Id.* at 534–35. He was then stopped by police, his vehicle was searched and a gun was found under the seat. *Id.* at 535–36. The Court held there was independent corroborative evidence of the anonymous tip suggestive of criminal activity when Mr. Deck was observed driving his vehicle with its lights off, despite it being evening, as if to avoid detection, and leaning down toward the passenger side of his vehicle when the officer shined his lights on him. *Id.* at 535. The Court found these circumstances corroborated the anonymous tip and provided grounds for reasonable suspicion to search the car. *Deck*, 994 S.W.2d at 536; *see also Grayson*, 336 S.W.3d at 145.

Here, it is our view that Officer Buske had reasonable suspicion to believe Appellant was, indeed, engaging in or had engaged in criminal activity based on the totality of the circumstances. "Factors that may be consistent with innocent conduct when considered alone may amount to reasonable suspicion when taken together." *State v. Bizovi*, 129 S.W.3d 429, 432 (Mo.App.2004). While nervousness alone is insufficient to establish reasonable suspicion, "it can be considered as one factor in the totality of the circumstances." *Id.* Likewise, while criminal history " 'cannot form the sole basis to determine reasonable suspicion ...,' " it can certainly be one of the factors in a criminal activity analysis. *Grayson*, 336 S.W.3d at 146 (quoting *State v. Lee*, 265 Neb. 663, 668, 658 N.W.2d 669 (2003)). In this instance, Officer Buske was aware Appellant had been placed on probation or parole for prior illegal drug activities. Further, Officer Buske was aware from prior police communications that Appellant had just left a known drug house and had his own independent knowledge of Appellant's character as well as what he observed at the scene of the traffic stop such that there was corroboration of a " 'suggest[ion] of criminal activity.' " *Id.* at 145 (quoting *Deck*, 994 S.W.2d at 536). Accordingly, based on the totality of the facts and circumstances in this case, Officer Buske had reasonable suspicion that Appellant was involved in or had been involved in criminal activity, which ripened into probable cause when the drug dog alerted on the vehicle. As such, Appellant's rights were not violated when he was detained, his vehicle searched, and illegal prescription drugs were confiscated. The trial court did not err in denying Appellant's motion to suppress the evidence taken from his vehicle and in overruling his objections at

trial to the introduction of such evidence. Point denied.[4]

The judgment and sentence of the trial court is affirmed.

DANIEL .E. SCOTT and WILLIAM W. FRANCIS, JR., JJ., concur.

---

4. We note Appellant also argues in his brief that his constitutional rights were violated by the length of time he was detained between the initial traffic stop and the discovery of the contraband as well as by the officers' decision to search the center console of his vehicle. These issues were not raised in his sparse motion to suppress and were not specifically argued to the trial court at the suppression hearing. As such they were not preserved for our review and will not be considered in this opinion. *See State v. Cadwell,* 209 S.W.3d 560 (Mo.App.2007).